UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ARIENS COMPANY,

Plaintiff,

v. Case No. 05-C-139

WEC COMPANY,

Defendant.

---

**ORDER**

---

The present dispute demonstrates the dangers inherent when businesses are both partners and competitors in the same market. Both sides have filed motions to compel, though neither, for obvious competitive reasons, wants to disclose its propriety business information. Of particular focus at present is one of Woods' counterclaims. Under the Supply Agreement, Ariens was to provide Woods with "major design improvements or upgrades," and Woods alleges, in short, that Ariens kept these upgrades for itself while the products it sold to Woods became obsolete. "Ariens . . . throughout the duration of the Supply Agreement, made major design improvements and feature upgrades to its own machines and sold machines with those improvements without providing improvements and upgrades to the products it manufactured for Woods." (Docket No. 32, Counterclaim at ¶ 10.)

**1. Woods' Motion to Compel Production Regarding Ariens' Sales and Marketing**

Woods wants access to a striking amount of Ariens' financial and marketing data, the theory being that its own lost profits could be illuminated if we know how profitable Ariens was during

the relevant period. (Br. in Supp. at 3.) That is, because Ariens was selling the products that *Woods* claims it was entitled to sell (i.e., those with major design upgrades), Ariens' own sales information is probative of the amount of profits Woods lost by not receiving the upgraded products. An example may be useful. Suppose a beverage supplier produced soda under its own label and also under contract for others. Suppose further that it developed a secret ingredient that made its own product wildly successful but that it withheld that ingredient from the product it produced under other labels. In that situation, assuming a similar Supply Agreement required disclosure, the contract customers could quite easily point to the supplier's sharp increase in sales and posit that those sales should at least partly be their own lost profits. In other words, in that scenario the secret ingredient is an obvious catalyst–a smoking gun, really–that explains the increased sales because, absent the secret ingredient, the products are otherwise fungible.

Ariens recognizes this possibility in the abstract, noting that "it might be expected that Woods was eagerly identifying the particular upgrades and improvements that Ariens improperly kept to itself, in order to draw causal connections between those missing features and losses suffered by Woods in the marketplace." Instead, however, Ariens claims Woods has never even identified the particular design improvements it claims it was owed–it only identified Ariens' own mowers which were not subject to the Supply Agreement. In short, Woods has identified no "smoking gun" that would lend itself to the cause-and-effect sales analysis set forth above. And because we do not even know this basic information about Woods' counterclaim, Ariens argues, disclosure of all of its proprietary business information would be improper.

Woods claims this is simply false because Ariens knew full well what improvements it had made to the relevant mowers. These changes included: "(i) adjustments to floating front axle; (ii)

shortening of frame; (iii) increased size of drive tires; (iv) type of air filters; (v) inclusion of Eye-Q system; (vi) addition of machine lift; and (vii) enlarged hydraulic pumps." (Docket No. 114 at 3.) Because Ariens was the manufacturer of its own units (branded "Gravely") as well as the Woods units, obviously it knew what the differences were, and in claiming otherwise Ariens is being disingenuous. But it is not enough for Woods to cite a laundry list of differences between the various models, because the Supply Agreement does not require disclosure of *any* differences in models–it addresses "major design improvements or upgrades." Yet wholly and conspicuously absent from Woods' briefs are any description, or even hint, that any of the differences it cites were actually major design improvements. (Docket No. 83, ¶ 6.4.)

Review of the deposition transcript of Robert Buzzard, of Woods, is more illuminating. In it, he complains that Ariens' mowers were shortened by 10 inches, they had 24" tires (rather than the 23" tires on Woods' mowers), and had a stiff front axle which alleviated a problem related to scalping grass. (Docket No. 115 at 133-140.) These improvements were known to both Woods and Ariens, but Ariens told Woods that the frame on the Woods mowers would not support the improvements. Other improvements involved a larger hydraulic pump, which allowed the Ariens machines to drive at 13 mph while Woods' machines could only go 9 mph. Buzzard lamented that people liked being able to say they could go 13 mph, rather than 9, and that the industry was moving forward while their own mowers were becoming obsolete. Thus, while the basis of Woods' counterclaim was not as self-evident as it claims, it is at least partially discernable from Buzzard's deposition. Accordingly, Ariens' objection to production on the grounds that it does not know the basis of the counterclaim is not entirely persuasive.

Ariens also objects to production on the grounds that the improved mowers described by Buzzard were not subject to the Supply Agreement at all. That is, the Agreement did not require Ariens to disclose and incorporate *every* technological advance it developed, but only those which were incorporated into the products manufactured under that agreement. Section 6.4(a) provides that: "As major design improvements or upgrades are identified *with respect to products manufactured hereunder,* Ariens will make these available to Woods at the same time they are included in *Ariens-comparable models*." (Docket No. 83, Ex. A.)

Ariens' claim that the mowers were not covered by the Supply Agreement seems meritorious: a mower that is 10 inches shorter than another mower, with a different frame and several other features, does not seem to be substantially similar to the mowers produced under the original agreement. Indeed, as Buzzard himself described it, it seemed that Ariens had moved to an "updated product line". (*Id.* at 136:18.) But Woods protests that there was really only one mower at issue here–the 260Z–and that it was in fact entitled to any design improvements on that mower. Moreover, the fact that the mowers might be different is itself possible evidence that Ariens breached the agreement–Ariens should not be allowed to develop new technology and then withhold that technology from Woods merely on the basis that the mowers are now "new" models not governed by the Supply Agreement.

What seems clear is that this issue is not resolvable on a motion to compel. In fact, it goes to the very heart of Woods' counterclaim and involves interpretation of the Supply Agreement: what products were manufactured under that agreement and which of Ariens's models would be deemed comparable. If Woods' interpretation ultimately carries the day, it could be entitled to lost profits based on sales it *should* have been able to make. The question, then, is what discovery it should be

allowed to conduct regarding Ariens' own financial situation–Ariens has not moved for bifurcation of liability and damages–and it seems clear that the discovery Woods seeks is much more than would be needed to show its own lost profits during the period in question. Woods claims that it's only fair to require Ariens to disclose the same kind of information it disclosed to Ariens itself, but that is not true. Woods is the only party claiming lost profits, and therefore it has voluntarily subjected itself to a more searching financial disclosure. Ariens' financial information is only relevant to Woods' lost profits insofar as it sheds light on how profitable Ariens' comparable mowers were during the period in question. But the question is not how profitable they were to *Ariens*, but how profitable they would have been to Woods. Thus, information Woods seeks about Ariens' marketing strategies, evaluations of competitors and the like is not relevant: how Ariens viewed the competition does not bear on what profits Woods actually lost. Similarly, the details of Ariens' financial picture, including its profits, are not relevant. As Ariens persuasively notes, it is not a proxy for Woods. There are so many different factors that go into profitability, balance sheets and income statements that to simply take Ariens' profits and claim that they bear any relation to the amount Woods *would* have realized would be completely unscientific. Obviously, buying mowers made by Ariens and then reselling them will not produce a profit comparable to that realized by Ariens itself.

Instead, the only conceivably relevant information pertains to Ariens' *sales* of potentially comparable products. For instance, if Ariens had sold 50,000 of the relevant units each year from 1995-2002, but then began selling 75,000 in subsequent years, those figures could conceivably be relevant to Woods. But that information has apparently been provided already. With information about how many units Ariens sold of each kind of mower, Woods can attempt to estimate how many

units *it* would have sold, and then plug that number into a profit calculus based on its own cost structure, dealer network, etc. This it will be able to do without respect to any other details about Ariens' own business, and thus none of the other information it seeks is relevant.

In sum, Woods' requests for information do not bear on what profits it lost due to Ariens' alleged breach of the Supply Agreement. Accordingly, the motion to compel is denied, and Ariens' motion for a protective order is denied as moot.

**2. Ariens' Motion to Compel**

In response to the same counterclaim, Ariens served its own discovery requests on Woods. In particular, Ariens sought the specifics of what design improvements comprised the basis of Woods' counterclaim. Apart from some documents that vaguely referred to various mower models, Woods has (as noted above) still not explicitly identified any specific design improvements that it believes should have been disclosed. Thus, Ariens wants this court to compel Woods to come forth with that information immediately.

As noted earlier, it appears at this point that Woods' bases for the counterclaim are the improvements noted by Robert Buzzard in his deposition. Ariens does not want to have to guess that such is the case, however; indeed, even now the actual basis for Woods' counterclaim remains shrouded in mystery. It is not an unreasonable request to require Woods to specifically identify, a year after filing its counterclaim, what improvements it believes it was owed under the Agreement. Accordingly, Woods is directed to make that explicit to Ariens within fifteen days of the date of this order.

In addition, Ariens wants Woods to produce documents showing the top twenty Woods dealers in the country and the amount of product Woods sold to them for the years 2000-2004. This

information is necessary, Ariens claims, in order to get an idea of what Woods' lost profits might be during the period Ariens was allegedly breaching the Supply Agreement by not disclosing design improvements. Although Woods has disclosed substantial amounts of its financial data, it has balked at disclosing information about its dealers. Ariens wants the information because it bears on the capacity Woods actually had to sell Ariens-made machines; if Ariens knows more about Woods' dealer structure, it might be able to show that Woods could not have sold many more mowers even if Ariens *had* disclosed all of its major design improvements.

This seems a reasonable request. The request is limited to Woods' top twenty dealers (out of more than 1000) and is therefore not the kind of fishing expedition that can get out of hand. It is at least the sort of discoverable material that could lead to relevant information, and Woods has admitted that it would not pose an undue burden. Accordingly, the motion to compel is granted on this score.

In sum, Woods' motion to compel is denied. Ariens' motion for a protective order is denied as moot, and its motion to compel is granted. Woods is directed to disclose within fifteen days which, if any, improvements it believes were required to be provided under the Supply Agreement. It is also directed to respond to Ariens' requests for information about its dealer network.

**SO ORDERED**.

Dated this 10th day of March, 2006.

s/ William C. Griesbach
William C. Griesbach
United States District Judge